### THE MAHAR &· BURNS.

### THE O. A. CRANDALL.

(District Court, S. D. New York. January 16, 1901.)

COLLISION—MEETING STEAMERS—FAILURE TO SIGNAL.

Two tugs with push tows of canal boats met on the Hudson river in the night, and a collision occurred, in which one of the tows was sunk. Both boats were to the west side of the river, and the weight of evidence tended to show that when half a mile apart, and each could see the other's lights, they were nearly head and head. At that distance the one coming down gave the proper signal for passing to the right, but it was not answered, and she kept on her course without repeating the signal or reversing, until too late to prevent collision. The other tug did not hear the signal, and did not herself signal, nor materially change her course or reverse, until the vessels were close together. *Held*, that both violated the rules, and were in fault for the collision.

In Admiralty. Suit for collision.

James J. Macklin, for libelant.

Wing, Putnam & Burlingham, for the Mahar & Burns.

Peter S. Carter, for the Crandall.

BROWN, District Judge. At about 4 a. m. in the morning in November, 1899, a collision took place between the libelant's canal boat William Otts, in tow of the tug Mahar & Burns, going up the Hudson river, and the canal boat Beebe, in tow of the tug Crandall going down, by which the Otts was sunk and the Beebe somewhat damaged. The collision was about a mile above the bridge at Poughkeepsie and probably within from 300 to 500 feet of the west shore. The tide was the last of the flood. Both boats were in push tows. The Mahar & Burns was pushing four boats, namely, two partly alongside, but running ahead of her, a third, the Roberts, directly ahead, and the William Otts, the most forward boat directly ahead of the boat on the tug's starboard side. The Crandall had one boat, the Beebe, directly ahead and two others on the starboard side, one ahead of the other, the Dobson leading. The night was cold and the air a little misty upon the water. The upgoing tow held to the west shore, because it was bolder, and the rocks and landmarks there could be better seen. An hour or two after collision thick fog set in.

The witnesses for the Mahar & Burns contend that the Crandall was coming down to the eastward of her, showing only her green light, and that the Crandall's green light alone was seen for some time before the collision and until the vessels were quite near each other, when the Crandall ·turned to the westward, shut in her green light and for the first time showed her red, being then only 200 or 300 feet off and rendering collision unavoidable. The Mahar & Burns at once gave danger signals and reversed, but without avail. The Crandall claims that she was coming down nearer to the west shore than the other tug was going; that she showed to the Mahar & Burns her red light only at all times; that when half a mile distant the latter showed both her green and red lights about a point to a point and a half on the Crandall's port bow, whereupon the Crandall gave a sig-

nal of one whistle; that the other tug kept on on the same course and bearing, showing both her colored lights until about 700 feet distant when she shut in her red light and showed her green light only, whereupon the Crandall gave a danger signal and reversed, having previously slowed.

At the time of collision there is little doubt that both tugs were heading somewhat towards the west shore. I do not think, taking the evidence altogether, that either tug changed her position in the river sufficiently to account for the collision merely by a sheer across the other's course in the brief period before the collision; and that the truth is, that the two were very nearly head and head when half a mile or more distant. In that situation each was bound to give a signal of one whistle and go to the right. The pilot of the Mahar & Burns, although he thought only the green light of the Crandall was visible, could not testify positively that the red light was not visible; while according to the testimony of the Crandall, the red light must have been visible a considerable time before collision. I am of the opinion, therefore, that the situation was as above stated. The Mahar & Burns gave no signal whatever until too late. Her pilot heard none from the Crandall, though the testimony from the latter is that a signal of one whistle was given half a mile distant. No answer was heard to this whistle by the pilot of the Crandall and the evidence shows that the Crandall kept her course, seeing both lights of the other tug for a considerable period coming ahead but without change; that she gave no further whistle nor any danger signal, nor reversed her engines until too late. Inspector's rule 3 as well as reasonable prudence required the Crandall both to repeat her signals and come to a stop if necessary to avoid collision. The New York, 175 U. S. 187, 201, 20 Sup. Ct. 67, 44 L. Ed. 126. For these reasons both tugs must be held to blame.